IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARSLAN SHAIKH**,<br>20 West Spring Ave.<br>Ardmore, PA 19003<br>*Resident of Montgomery County, PA*<br><br>　　　　　　　　Plaintiff;<br>vs.<br><br>**AL-AQSA ISLAMIC ACADEMY,**<br>1501 N. Germantown Ave.<br>Philadelphia, PA 19122<br>*Pennsylvania Non-Profit Corporation*<br><br>　　and<br><br>**SHIREEN HAMMOUDEH,**<br>1501 N. Germantown Ave.<br>Philadelphia, PA 19122<br>*Resident of Philadelphia County, PA*<br><br>　　　　　　　　Defendants. | CIVIL DIVISION<br><br><br>Docket No.: 23-cv-02619<br><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT IN CIVIL ACTION**<br><br>Filed on behalf of Plaintiff:<br>ARSLAN SHAIKH<br><br><br>Counsel of Record for this Party:<br>Steven Auerbach, Esquire, LL.M.<br>Law Office of Steven T. Auerbach<br>201 Meetinghouse Lane<br>Merion Station, PA 19066<br>Ph:　(215) 964-4410<br>Fax: (215) 613-0890<br>Auerbach.Steven@gmail.com<br>Pa. I.D. #317309 |

## TABLE OF CONTENTS

                                                                                               **Page**

INTRODUCTION ……………………………………………………………………………… 1

PARTIES ……………………………………………………………………………………….. 2

EXHAUSTION OF ADMINISTRATIVE REMEDIES ……………………………………….. 3

JURISDICTION AND VENUE ……………………………………………………………….. 4

FACTUAL ALLEGATIONS FOR ALL CLAIMS …………………………..................……. 5

Wrongful Termination Allegations ……………………………………………..……………. 5

    a.  Background of the Anti-Black Animus at Al-Aqsa ……………………………..…… 5

    b.  Plaintiff Observed and Opposed Defendants' Racism …………………….…...…..… 6

    c.  Plaintiff was Terminated ……………………………………………….................…… 6

Wage/Hour Allegations ……………………………………………………….…..………….. 7

    a.  Plaintiff was Not Paid All Wages Due to Him at the End of His Employment …………. 7

CAUSES OF ACTION …………………………………………...……………..…………….. 8

    A.  Count I. Title VII: Wrongful Termination …………….….............................…....... 8

    B.  Count II. PHRA: Wrongful Termination ……….……..…..…………….................. 8

    C.  Count III. PFPO: Wrongful Termination ……………………….…...…….....…….. 9

    D.  Count IV. PaWPCL: Failure to Pay Wages at the End of Employment ……...……..…. 10

PRAYER FOR RELIEF …………………………………………………….................…… 11

DEMAND FOR TRIAL BY JURY …………………………………………….............…… 13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARSLAN SHAIKH,<br>    Plaintiff;<br><br>vs.<br><br>AL-AQSA ISLAMIC ACADEMY, et al.,<br>    Defendants. | CIVIL DIVISION<br><br>Docket No.: 23-cv-02619 |

## I. EMPLOYMENT RETALIATION AND WAGE/HOUR COMPLAINT

Plaintiff Arslan Shaikh ("Mr. Shaikh" or "Plaintiff"), by and through his undersigned counsel, the Law Office of Steven T. Auerbach, hereby files this Complaint against Defendants Al-Aqsa Islamic Academy ("Al-Aqsa") and Shireen Hammoudeh ("Ms. Hammoudeh")(together, the "Defendants")(collectively, the "Parties") seeking declaratory, injunctive, and equitable relief; economic, compensatory, and punitive damages; and attorneys' fees to redress Defendants' violations of civil rights as secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq* ("Title VII"); the Pennsylvania Human Relations Act, 43 PA. Cons. Stat. § 951 *et seq* (the "PHRA"); and the Philadelphia Fair Practices Ordinance, 9 Phila. Code § 1101 *et seq* (the "PFPO").

Plaintiff further seeks unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 2601.1, *et seq*. (the "PaWPCL"), and in support thereof, avers the following:

## II. INTRODUCTION

 A. **Employment Retaliation**

1. Title VII, the PHRA, and the PFPO prohibit race-based discrimination. By opposing a supervisor's violation of these laws, employees can and do sustain substantial damages, both

economically and emotionally, when they are punished for having performed this civic duty. Invariably, unemployment becomes a collateral consequence of having "done the right thing."

2. Acknowledging this potential for harm, federal, state, and local laws/ordinances, pursuant to Title VII, the PHRA, and the PFPO, provide important substantive and procedural protections to those who are punished for having opposed activity that they reasonably believed were discriminatory.

3. Plaintiff's employment retaliation claims arise out of Defendants' choice to fire him within hours of his having complained about workplace discrimination that was targeting black children.

### B. Wage/Hour Violations

4. The PaWPCL requires employers to timely pay all wages owed after the conclusion of the employment relationship.

5. Plaintiff's wage/hour claims arise out of Al-Aqsa's failure to pay Plaintiff all wages that were owed to him after his termination.

### III. PARTIES

6. Plaintiff, Mr. Shaikh is an adult citizen of the United States and is a resident of Ardmore, Pennsylvania.

7. Defendant, Al-Aqsa is a not-for-profit Pennsylvania Islamic school located in Philadelphia, Pennsylvania.

8. Al-Aqsa has and continues to employ approximately thirty (30) employees in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

9. Plaintiff worked for Al-Aqsa, who, at all times throughout his employment, fell within the definition of the term "employer" under Title VII, the PHRA, the PFPO, and the PaWPCL.

10. From August 2020 through April 28, 2023 (the "Term of Employment"), Plaintiff was employed with Al-Aqsa as general studies teacher.

11. During the Term of Employment, Plaintiff's supervisor was Defendant, Shireen Hammoudeh. Ms. Hammoudeh is an adult individual and is a resident of Philadelphia, Pennsylvania.

12. At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of Title VII, the PHRA, the PFPO, and the PaWPCL.

13. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

14. Defendants caused the violations set forth in this Complaint.

15. Defendants failed to adequately train their employees to prevent and/or correct the violations set forth in this Complaint.

16. Defendants failed to adequately supervise their employees to prevent and/or correct the violations set forth in this Complaint.

17. Defendants failed to prevent and aided and abetted in the violations set forth in this Complaint.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

18. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

19. On May 3, 2023, Plaintiff filed a timely charge of employment retaliation with the United States Equal Employment Opportunity Commission ("EEOC") and directed same to cross-file

with the Pennsylvania Human Relations Commission ("PHRC") and the Philadelphia Commission on Human Relations ("PCoHR").

20. Plaintiff received his "Right to Sue" notice from the EEOC July 7, 2023.

21. Plaintiff commenced this action within ninety (90) days of receipt of this notice.[1]

## V. JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1334 because it arises under the laws of the United States and seeks redress for violations of federal laws and/or seeks to recover damages and to secure equitable relief under an act of Congress providing for the protection of civil rights.

23. Discretionary supplemental jurisdiction over Plaintiff's state and local law claims is provided by 28 U.S.C. § 1367(a). The state and local law claims form part of the same case or controversy and derive from the same common nucleus of operative facts on which Plaintiff's federal claims are based. Furthermore, no reasons exist that would require this Honorable Court to decline jurisdiction. The state and local law claims do not raise novel or complex issues of state law, do not substantially predominate the claims over which this Honorable Court has original jurisdiction, and no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. § 1367(c).

24. This Court may properly maintain personal jurisdiction over Defendants because their contact with this Commonwealth and this judicial district are sufficient for the exercise of jurisdiction, complying with traditional notions of fair play and substantial justice, satisfying the

---

[1] Although Plaintiff commenced this action before the expiration of the PHRC and PCoHR's one-year exclusive jurisdiction, this one-year period will expire during Court proceedings. *See Bines v. Williams, et al.*, PICS No. 17-4527 (E.D. Pa. 2018)(Courts in this Circuit have adopted a flexible approach to PHRA exhaustion by permitting plaintiffs to maintain PHRA claims if the one-year deadline expires during court proceedings. Rather than dismissing a plaintiff's claim on a curable, technical defect, these courts allow the PHRC and PFPO claims to be decided on the merits.") (internal citations omitted).

standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S, 310 (1945), and its progeny.

25. Pursuant to 28 U.S.C. §§ 1391(b)(2), venue is appropriate as most if not all of the unlawful acts central to this matter occurred within Philadelphia, Pennsylvania.

## VI. FACTUAL ALLEGATIONS FOR ALL CLAIMS

26. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

27. From August 2020 through April 28, 2023 (the "Term of Employment"), Plaintiff was employed with Defendants as a general studies teacher.

28. Throughout the Term of Employment, Plaintiff consistently demonstrated excellent performance and dedication to Defendants. Plaintiff performed his job duties and responsibilities in a highly competent manner and routinely received positive feedback.

    a. **Background of the Anti-Black Animus at Al-Aqsa**

29. Throughout the Term of Employment, Plaintiff observed the disproportionate allocation of discipline and removal of black children relative to their non-black counterparts. By way of example, A.S., Z.W., S.B., former black students of Plaintiff, were removed from school because of their minor behavioral issues. M.M. (a non-black student), however, intentionally threw a Quran on the floor and remains a student of Al-Aqsa as of this day.

30. On another occasion, a non-black student was permitted to tell a black student that he should "go pick cotton." When Plaintiff wrote a report about this incident, Defendants edited his report to omit the overt racism.

31. Plaintiff also observed that non-black children were given privileges denied to black children. On one occasion, several non-black students received failing grades. These grades were

then changed to "passing" by Defendants. In the three (3) years that Plaintiff taught at Al-Aqsa, he never saw this benefit conferred to black children.

### b. Plaintiff Witnessed and then Opposed Defendants' Racism

32. On or about 2 P.M. on April 27, 2023, Plaintiff was proctoring a PSSA exam. The assistant principal, Ms. Sabani, interrupted Plaintiff's proctoring duties to tell him that students had lodged a complaint against him.

33. This prompted Plaintiff to then speak with Ms. Hammoudeh about these allegations during his break.

34. Ms. Hammoudeh told Plaintiff not to worry. According to Ms. Hammoudeh, these vague allegations were meritless[2], and that the only reason the children had complained was because "they're black and are trying to manufacture a lawsuit."

35. Ms. Hammoudeh finished the conversation with a promise to- "find a reason to get rid of [the black students"].

36. Plaintiff left this meeting stunned by this display of overt racism.

37. Believing this conduct to be illegal and on the following evening (on April 28, 2023), Plaintiff sent an emailed complaint to the Chief of Staff of the Pennsylvania State Senate, Mr. George Donnelly, and cc'd Al-Aqsa's administration about Ms. Hammoudeh's anti-black remarks. He then added his observation that Respondents' disproportionately target black students for removal.

### d. Defendants' Immediate Retaliation

38. Thirty (30) minutes later, Plaintiff was locked out of his email.

39. Several hours later, Defendants emailed Plaintiff a termination letter.

---

[2] Incidentally, Plaintiff received an email that night from a parent of one of the accusing students retracting all allegations.

40. Plaintiff was terminated, effective April 28, 2023, for opposing conduct made unlawful by Title VII, the PHRA, and the PFPO.

41. Ms. Hammoudeh proximately caused Plaintiff's termination.

42. Plaintiff connects this termination to his opposition of unlawful conduct by sequence, by an unusually-suggestive temporal proximity (minutes), by direct managerial statements (described below), and by a non-isolated pattern of antagonism.

43. Plaintiff believes, and therefore avers, that had he not participated in protected activity, he would not have been terminated. In fact, on May 3, 2023, and on a recorded line, Al-Aqsa acknowledged that the reason they dismissed Plaintiff was because he had complained about racism. A true and correct copy of this admission is found on this link:

https://drive.google.com/file/d/19nhSCoqwQDWmFALo6G1VDi6u2lhoECeK/view?usp=share_link

44. This termination detrimentally affected Plaintiff's mental health through feelings of depression and anxiety, caused a loss of wage, and adversely affected his reputation.

45. This would detrimentally affect a reasonable person in like circumstances.

    e. **Wage/Hour Violations**

46. The PaWPCL requires employers to timely pay wages after the conclusion of the employment relationship.

47. To date, Al-Aqsa has not paid all wages owed to Plaintiff (the specific amount of which is not yet known but will be determined in discovery) despite the Parties having severed the employment relationship.

**COUNT I: ARSLAN SHAIKH v. AL-AQSA ISLAMIC ACADEMY, et al.**
<u>Title VII- Wrongful Termination</u>
(Al-Aqsa only)

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Al-Aqsa's mistreatment of Plaintiff was motivated not only by a callous indifference to his federal rights, but were in utter disregard of same. Al-Aqsa carried out a plan to mistreat Plaintiff because he had opposed unlawful discrimination. The impunity with which it acted is demonstrated by that it wrought retribution on its first opportunity.

50. This mistreatment culminated in Plaintiff's wrongful termination.

51. By committing the foregoing acts of retaliation against Plaintiff, Al-Aqsa has violated Title VII.

52. Al-Aqsa's practices were performed with malice or with reckless indifference to the protected rights of Plaintiff.

53. As a direct and proximate result of Al-Aqsa's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

54. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Al-Aqsa's retaliatory acts unless and until this Court grants the relief requested herein.

55. No previous application has been made for the relief requested hisein.

**COUNT II: ARSLAN SHAIKH v. AL-AQSA ISLAMIC ACADEMY, et al.**
<u>The PHRA- Wrongful Termination</u>
(All Defendants)

56. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57. Defendants' mistreatment of Plaintiff were motivated not only by a callous indifference to his state rights, but were in utter disregard of same. Defendants carried out a plan to mistreat

Plaintiff because he had opposed unlawful discrimination. The impunity with which they acted is demonstrated by the fact that they wrought retribution on their first opportunity.

58. This mistreatment culminated in Plaintiff's wrongful termination.

59. By committing the foregoing acts of retaliation against Plaintiff, Defendants have aided and abetted in violating the PHRA.

60. As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

61. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

62. No previous application has been made for the relief requested herein.

**COUNT III: ARSLAN SHAIKH v. AL-AQSA ISLAMIC ACADEMY, et al.
The PFPO- Wrongful Termination**
(All Defendants)

63. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

64. Defendants' mistreatment of Plaintiff were motivated not only by a callous indifference to his local rights, but were in utter disregard of same. Defendants carried out a plan to mistreat Plaintiff because he had opposed unlawful discrimination. The impunity with which they acted is demonstrated by the fact that they wrought retribution on their first opportunity.

65. This mistreatment culminated in Plaintiff's wrongful termination.

66. By committing the foregoing acts of retaliation against Plaintiff, Defendants have aided and abetted in violating the PFPO.

67. Defendants' practices were performed with malice or with reckless indifference to the protected rights of Plaintiff.

68. As a direct and proximate result of Defendants' violation of the PFPO, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

69. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

70. No previous application has been made for the relief requested herein.

### COUNT VII: ARSLAN SHAIKH v. AL-AQSA ISLAMIC ACADEMY, et al.
### PaWPCL- Failure to Pay Wages at End of Employment
(Al-Aqsa only)

71. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72. Plaintiff operated under a written or implied contractual relationship with Al-Aqsa where Plaintiff was to render useful services worthy of an expectation of compensation and Al-Aqsa was to fully compensate Plaintiff for these services.

73. Plaintiff performed such services with knowledge and approval of Al-Aqsa.

74. Plaintiff has not received compensation from Al-Aqsa for all wages owed for work performed in accordance with the PaWPCL.

75. Plaintiff is entitled to wages under the PaWPCL, 43 P.S. § 260.3, which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid their wages.

76. Al-Aqsa wilfully and intentionally withheld from Plaintiff the wages owed to him, even after Plaintiff informed Al-Aqsa of the violation.

77. Under the PaWPCL, there is no bona fide dispute that Plaintiff is owed additional wages for work performed while employed by Al-Aqsa.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

a. Award declaratory relief, pursuant to 28 U.S.C. § 2201(a) declaring that the above acts violate Title VII, the PHRA, the PFPO, and the PaWPCL;

b. Award judgment against Al-Aqsa for its failure to pay Plaintiff in accordance with the stands set for by the PaWPCL;

c. Award judgment against Al-Aqsa and classifying its conduct as willful, not in good faith, and that it was not the result of a bona fide dispute, with respect to failing to pay all wages at the end of the employment relationship under the PaWPCL;

d. Award judgment against Al-Aqsa and classifying Plaintiff as an individual entitled to protection and compensation under the PaWPCL;

e. Award injunctive relief, pursuant to Title VII (§ 706(g)), the PHRA (§ 12(c)(3)), and the PFPO (§9-1105(1)(b)) compelling Al-Aqsa to discontinue its practice of violating Title VII, the PHRA, and the PFPO in its adverse treatment of those who oppose discrimination and providing a system to monitor compliance;

f. Award injunctive relief, pursuant to Title VII (§ 706(g)), the PHRA (§ 12(c)(3)), and the PFPO (§9-1105(1)(b)), directing Al-Aqsa to reinstate or promote Plaintiff to the position he would have occupied but for Defendants' unlawful conduct;

g. Award equitable relief, pursuant to Title VII (§ 706(g)), the PHRA (§ 12(c)(3)), and the PFPO (§9-1105(1)(b)), requiring Defendants to make Plaintiff whole for all earnings he would have received but for Defendants' unlawful conduct, including but not limited to wages, overtime, bonuses, and other lost benefits;

h.  Enter an award against Al-Aqsa, pursuant to the PaWPCL (§ 10), of liquidated damages equal to twenty-five percent (25%) of unpaid wages owed to Plaintiff;

i.  Award compensatory damages, pursuant to 42 U.S.C. § 1981a(b)(3), requiring Al-Aqsa to make Plaintiff whole for his past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses; and to mold/apportion any verdict in excess of the applicable damage's cap to a claim under the PHRA/PFPO;

j.  Award punitive damages, pursuant to 42 U.S.C. § 1981a(b)(1), punishing Al-Aqsa for its malice/reckless indifference to Plaintiff's federally-protected rights;

k.  Award punitive damages, pursuant to the PFPO (§9-1105(1)(d)), punishing Defendants for their malice/reckless indifference to Plaintiff's locally-protected rights

l.  Award reasonable attorneys' fees and costs pursuant to Title VII (§ 706(k)), the PHRA (§ 12(c.2)), the PFPO (§9-1105(1)(e)); and the PaWPCL (§ 9(f)); and

m.  Award such other relief as this Court deems necessary and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the complaint.[3] [4]

                **LAW OFFICE OF STEVEN T. AUERBACH**

By:    /s/ Steven Auerbach_____
        Steven Auerbach, Esquire, LL.M.
        201 Meeting House Lane
        Merion Station, PA 19066
        (215) 964-4410
        Auerbach.Steven@gmail.com

*Attorney for Plaintiff*

Dated: July 7, 2023

---

[3] Pursuant to L. Fed. R. Civ. P. 53.2(3)(A), this matter is excluded from compulsory arbitration as jurisdiction is based in whole or in part on 28 U.S.C. §1343.

[4] Plaintiff's right to trial by jury on his Title VII claims is guaranteed by 42 U.S.C. § 1981a(c). Plaintiff's right to trial by jury on his state and local law claims is guaranteed by the Seventh Amendment of the United States Constitution. *See Graham v. Tolzis Communications, Inc., et al.*, PICS No. 98-6269 (E.D. Pa 2000).